# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:13CR00034-001 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **LEON WILLIAM CARR,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy C. Dickenson-Vicars, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant, Leon William Carr, a federal inmate previously sentenced by this court, has filed a motion seeking compassionate release from his sentence. The motion is filed pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (2018), which permits a reduction in sentence after considering the factors set forth in 18 U.S.C. § 3553(a) and if the court finds "extraordinary and compelling reasons warrant such a reduction" and the reduction "is consistent with applicable policy statements issued by the Sentencing Commission."[1] The defendant's motion has been fully briefed and is ripe for decision.

---

[1] The Sentencing Commission has adopted such policy provisions. Those policies provide in pertinent part that release may be granted if the court determines that "[e]xtraordinary and compelling reasons warrant the reduction" and "[t]he defendant is not

I.

Carr was a leader of a large-scale conspiracy to distribute cocaine, cocaine base, and heroin. On July 28, 2014, he pled guilty, pursuant to a written plea agreement, to one count of conspiring to possess with the intent to distribute cocaine base and cocaine, both Schedule II controlled substances, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(c). The parties stipulated that the offense involved at least 28 grams of cocaine base, although the Presentence Investigation Report indicated that Carr could have been held responsible for distributing at least 1.7 kilograms. On October 27, 2014, the court sentenced Carr to 100 months imprisonment, to be followed by a five-year term of supervised release.

Carr is currently housed in the low security camp at the Federal Correctional Institution at Ashland, Kentucky ("FCI Ashland"). He has served more than 75% of his sentence and will be eligible for home detention on June 3, 2020, and for placement at a halfway house on July 7, 2020. While he had a substantial criminal

---

a danger to the safety of any other person or to the community." U.S. Sentencing Guidelines Manual § 1B1.13(1)(A), (2) (U.S. Sentencing Comm'n 2018). These policies have not changed since the First Step Act of 2018 amended § 3582(c)(1)(A) to allow a direct motion by the inmate. But in any event, even the present commentary to § 1B1.13, while listing circumstances that the Director of the Bureau of Prisons is encouraged to consider in determining whether to file a motion for reduction, also emphasizes that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction) after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community." *Id.* at cmt. n.4.

history prior to his present incarceration, he has not committed any significant infractions while incarcerated.   He completed the Residential Drug Treatment Program, which allowed for a reduction in his sentence.   His current projected release date is December 3, 2020.

Upon his release, Carr intends to live with his father in Wytheville, Virginia, and his home plan has been approved by the United States Probation Office for this district.   He has made arrangements for his father or wife to transport him from FCI Ashland to his father's home, and to immediately take a Covid-19 test upon his arrival in Wytheville.   He asserts that he will self-quarantine at his father's home for 14 days following his release.

Carr is 47 years old  and suffers from high blood pressure, high cholesterol, and diabetes.   He has submitted reports of expert witnesses stating that these three medical conditions increase the risk of serious illness or death in persons who contract Covid-19.   The government concedes that Carr's underlying health conditions would likely worsen his prognosis if he contracted Covid-19, but it notes that FCI Ashland has reported no cases of Covid-19.

On April 7, 2020, Carr sent an email to the Warden of FCI Ashland asking to be considered under the "CARE Act."   Gov't's Resp. in Opp'n to Mot. for Compassionate Release Ex. 1, ECF No. 254-1.  In his email, Carr wrote, "I am more susceptible to get the COVID-19 because of my health.  I'm a chronic care patient,

level #2.  I have high blood pressure, high cholesterol and I am a diabetic.  I take mental health medication." *Id.*  The Warden denied Carr's request, writing in response, "You are ineligible for home confinement under the CARES Act due to your Medium Risk Recidivism Level and your serious history of violence." *Id.*  The date on which this response was sent is not apparent from the record; however, Carr does not assert that it was sent on a date outside the 30-day window set by the statute.

II.

The government contends that Carr failed to exhaust his administrative remedies because he did not make a request to the Warden to be considered for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  Instead, Carr's email to the Warden referenced the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516.  The government notes that requests for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) "go to the warden, Regional Direct[or], and then the Director, and are subject to the exhaustion requirement before a district court assumes jurisdiction."  Gov't's Resp. in Opp'n to Mot. for Compassionate Release 9, ECF No. 254.  Requests for home confinement under the CARES Act, on the other hand, are not subject to the same exhaustion requirements.  The government asserts that because Carr's request was made under the CARES Act, it "was not given the same consideration and process that a Reduction in Sentence request is given." *Id.*

- 4 -

The regulation governing the form of an inmate's request for compassionate release states:

> (a) A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden. Ordinarily, the request shall be in writing, and submitted by the inmate. An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing. The inmate's request shall at a minimum contain the following information:
>
> > (1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.
> >
> > (2) Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

28 C.F.R. § 571.61(a). The regulation does not provide that a request must specifically use the words "compassionate release" or "early release" or that it must reference the applicable statute.

I find that the Warden would have understood Carr's email request to encompass a request for compassionate release even though it only specifically referred to the CARES Act. The email discussed Covid-19 and Carr's medical conditions. These are the extraordinary and compelling circumstances on which Carr relies. The email was submitted to the Warden as required by the statute and regulation. While the email does not comply with subparagraph (2) of § 571.61(a), the government has not raised this issue.

- 5 -

Although I conclude that Carr made the required request to the Warden, that alone is not sufficient to allow me to consider his motion on the merits. The Warden responded by denying Carr's request. He must therefore proceed through the full administrative remedy scheme before filing a motion in this court.

The court may grant a § 3582(c)(1)(A) motion by an inmate "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

The regulations adopted by the Bureau of Prisons provide that when an inmate's request under § 3582(c)(1)(A) is denied by the warden, the inmate may appeal the denial through the Administrative Remedy Procedure (ARP). 28 C.F.R. § 571.63(a) (2018). The ARP provides for an appeal by the inmate within 20 days to the appropriate Regional Director, and from there within 30 days to the General Counsel of the Bureau of Prisons. *Id.* at § 542.15(a). A denial by the General Counsel constitutes a final administrative decision. *Id.* at § 571.63(b).

 I have held that the proper interpretation of § 3582(c)(1)(A) is to excuse full exhaustion of administrative remedies "only if 30 days have elapsed without any response by the Bureau of Prisons to the inmate's request." *United States v. Nance*, 7:92CR00135, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020) (citing *United*

*States v. Bolino*, No. 06-cr-0806 (BMC), 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020)).  In other words, when a warden denies an inmate's request within 30 days, the inmate needs "to exhaust his administrative remedies to *appeal* the warden's denial before filing."  *United States v. Brummett*, No. 6:07-103-DCR, 2020 WL 1492763, at *1 (E.D. Ky. Mar. 27, 2020).  *Accord, e.g.*, *United States v. Eisenberg*, No. 16-cr-157-LM, 2020 WL 1808844, at *1 (D.N.H. Apr. 9, 2020); *United States v. Mattingley*, No. 6:15-cr-00005, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020); *United States v. Hilton*, No. 1:18cr324-1, 2020 WL 836729, at *2 (M.D.N.C. Feb. 20, 2020).

There are cases to the contrary.  *See, e.g.*, *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020) (holding that the statute allows an inmate the choice of either fully exhausting all administrative remedies or "simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court").  However, I find requiring full exhaustion unless the warden does not respond within the time limit imposed more likely corresponds with congressional intent.  It balances the advantage of prompt consideration of an inmate request with the equal advantage to the inmate of permitting further review of the warden's denial by officials who are likely to have a broader view of the policies involved.  If the interpretation were otherwise, there would be no reason for the statute's express condition of full exhaustion of

administrative remedies.  Congress would merely have provided that the inmate's motion can be filed any time after 30 days from his submission to the warden.  If denied or not acted upon, the inmate could then file his motion in the sentencing court or if he felt he might fare better administratively, wait for the warden's response and pursue his administrative appeals, with the option at any time of abandoning the administrative process and filing his motion.

It is argued that the statute's administrative exhaustion requirement may be disregarded.  *See United States v. Soto*, No. 1:18-cr-10086-IT, 2020 WL 1905323, at *5 (D. Mass. Apr. 17, 2020) (holding that court may waive exhaustion under § 3582(c)(1)(A) based on "timeliness and exigent circumstances").  But where exhaustion is imposed by statute, congressional intent governs.  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *superseded on other grounds by statute as recognized in Porter v. Nussle*, 534 U.S. 516, 523–24 (2002).   As with the Prison Litigation Reform Act,[2] exhaustion allows prison authorities, those often closest to the facts, to examine the circumstances and explain the administrative denial, which may assist in informing the court's decision.  The administrative appeals may also

---

[2] "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

result in a ruling in the inmate's favor, which saves judicial resources.  Whether or not this statutory requirement is a jurisdictional prerequisite, I find it mandatory.

Carr contends that futility excuses administrative exhaustion in this case because the government has argued, "If he cannot obtain home confinement under BOP's priority program or through the administrative remedies process, he is likely not a suitable candidate for compassionate release."  Gov't's Resp. in Opp'n 6, ECF No. 254.  According to the defendant, "It is abundantly clear then that any request made by Mr. Carr, by whatever means, to the warden or to the unit team, will be denied and any further attempts to gain relief from the Bureau of Prisons are futile."  Def.'s Reply in Favor of Compassionate Release 3-4, ECF No. 255.

But futility as a ground for excusing exhaustion of administrative remedies is generally applied where the remedy, while "technically available" is "practically speaking, incapable of use." *Williams v. Priatno*, 829 F.3d 118, 126 (2d Cir. 2016) (internal quotation marks and citation omitted).   While the futility doctrine thus may be available under § 3582(c)(1)(A) where, for example, the inmate's release date would not reasonably permit the administrative process to fully run its course, *see United States v. Feiling*, 3:19cr112 (DJN), 2020 WL 1821457, at *6 (E.D. Va. Apr. 4, 2020), that is not the situation here.  Although Carr will soon be eligible for release to home confinement or a halfway house, his actual release date is still more than six months away.

Because Carr has not exhausted his administrative remedies, I may not consider the merits of his request, and his motion must be denied.

III.

For these reasons, it is **ORDERED** that the defendant's motion and supplemental motion, ECF Nos. 247 and 250, are DENIED.

ENTER:   June 1, 2020

/s/ *JAMES P. JONES*
United States District Judge